IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01933-RBJ-MEH

LISA PATEL,

      Plaintiff,

v.

MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Plaintiff's Complaint to Review Decision of Commissioner of Social Security [filed July 5, 2011; docket #1]. The complaint is referred to this Court for recommendation. (Docket #18.) Oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court respectfully recommends that the District Court **AFFIRM** the Social Security Commissioner's decision that Plaintiff is not disabled.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F.

## BACKGROUND

I.     **Facts**

Plaintiff Lisa Patel was born on December 3, 1969.  R. at 135.  She earned a bachelor's degree in criminal justice and holds an associate degree as a forensic technician.  R. at 46.  Prior to attending school, she performed construction cleaning from 1993 to 1996.  R. at 47.  In the field of criminal justice, she has worked as a crime analyst, crime intelligence technician, and a private investigator.  R. at 46.  She starting working at the Public Defender's Office in 2006, but left work in 2007 due to a nervous breakdown. R. at 47. Plaintiff identifies June 27, 2007, as her disability onset date.  R. at 14.  In addition to anxiety, Plaintiff also suffers from fibromyalgia, chronic pain, post-traumatic stress disorder (PTSD), disc degeneration in her lower back and neck, anemia, depression, insomnia, memory loss, and pulmonary problems.  R. at 135, 140, 168.

Prior to Plaintiff's onset date, several of Plaintiff's treating physicians expressed concern about Plaintiff's drug use and its effect on her various maladies.  On September 23, 2003, Dr. Jose Rafael Marquina observed that Plaintiff had used a lot of medications to control her pain, and speculated that Plaintiff's pulmonary issues could be drug induced.  R. at 374.   Plaintiff has also been hospitalized on several occasions for problems related to drug withdrawal. R. at 385, 417. One emergency room report states that Plaintiff checked into the hospital "seem[ing] under the influence of drugs" and seeking pain medication.  R. at 480.   When doctors informed her that they would not prescribe her medicine against her treating physician's instructions, Plaintiff left abruptly against medical advice.  R. at 480-81.

Plaintiff received medical evaluations from two physicians approximately a month before

---

App'x 381, 382-83 (10th Cir. 2009).

her onset date.  On May 25, 2007, Dr. Arthur Kalman performed a physical examination of Plaintiff and observed, among other qualities, that Plaintiff exhibited normal affect, normal ambulation, normal coordination, normal ability to walk, and normal bilateral, radial, unlar, and pedal pulses in all four extremities.  R. at 473-74.  Dr. Kalman ordered an MRI of Plaintiff's neck and back, and recommended Plaintiff continue psychiatric treatment.  R. at 474.

On Dr. Kalman's referral, Plaintiff met with Dr. Michael Novak on June 14, 2007.  R. at 476.  Dr. Novak reviewed Plaintiff's MRI results and opined that Plaintiff may have a "bit of dystonia/toricollis" which accounted for Plaintiff's neck pain and muscle spasm.  R.  at 478.   He recommended Zanaflex and an ergonomic evaluation for Plaintiff's neck and shoulder pain, and provided Plaintiff with a dietary plan to address her headaches.  *Id*.  He also noted that Plaintiff had pain management and medication issues, but would leave the "weaning off pain medication" to Dr. Kalman's discretion.  *Id*.

Between June and July 2007, Plaintiff received treatment from Dr. F. Desmond Hussey for pain and depression.  R. at 519-39.  On July 30, 2007, Dr. Hussey opined that Plaintiff was able to function, and her depression had improved.  R. at 521.  Though Mr. Hussey intended to follow up with Plaintiff in three months, the record indicates she did not return to him for further treatment.  *Id*.  When asked to assess Plaintiff for purposes of her disability application, Dr. Hussey indicated that Plaintiff's pain would frequently interfere with even simple tasks, and that Plaintiff was incapable of performing even "low stress" jobs.  R. at 536.  He estimated that Plaintiff could sit for approximately 20 minutes before needing to stand, that she could stand for 15 minutes before needing to sit or walk around, and that her walks would need to be at least 30 minutes long.  R. at 537.  He further opined that Plaintiff should rarely move her head or lift more than 10 pounds, and

3

that she should never twist, climb, bend, or squat.  R. at 538.  In light of her impairments, Dr.

Hussey believed Plaintiff would miss more than four days of work every month.  *Id.*

According to the record, Plaintiff had lab work performed in December 2007, and visited the

emergency room in December 2007, and January 2008.  R. at 623.  Her next medical appointment

occurred in March 2008, at Sunrise Community Health Center (SCHC) Monfort Clinic, after

Plaintiff moved to Colorado.  R. at 623.  While at SCHC, Plaintiff received treatment from Drs. John

Marlin, Trevor Bush, and John Volk.  R. at 617-81, 697-713, 791, 794.

In March 2008,  Dr. Marlin met with Plaintiff and evaluated her medical records and history.

R. at 621-629.  Dr. Marlin identified Plaintiff's various aliments, including anemia, anxiety,

fibromyalgia, chronic pain, and narcotic abuse.  R. at 627.  Given Dr. Marlin's  belief that "there is

a strong probability that narcotic addition is a large component of [Plaintiff's] conditions," he also

provided Plaintiff with a Pain Management Contract intended to regulate Plaintiff's use of narcotics.

R. at 629-631.  In the same month she met with Dr. Marlin, Plaintiff also attended an intake session

at North Range Behavioral Health (NRBH), where she received counseling and medication refills.

 R. at 588-02, 605-16, 691, 693-94.

Upon referral from SCHC, Plaintiff began treatment with Dr. Phillip Abston in May 2008.

R. at 581.  Dr. Abston elected to treat Plaintiff with epidural steroid injections and prescribed her

Percocet for her pain.[2]  R. at 566, 572, 574, 581.  As of June 20, 2008, Plaintiff reported that her leg

pain was significantly better following the injections.  R. at 574.   At a follow-up visit on August

15, 2008, Dr. Abston reviewed Plaintiff's MRI and concluded that "her scans were, essentially,

---

[2]The Court is slightly puzzled by Plaintiff's reportedly stable use of Percocet in June
2008, given that medical records from March 2008 report an allergy to Percocet.  *Compare* R. at
574 *with* R. at 623.

normal with only minor abnormalities and nothing to correlate with her 'severe pain.'" R. at 560. According to Dr. Abston, Plaintiff seemed primarily interested in receiving prescription drugs and obtaining a signature from Dr. Abston for her disability application. R. at 560-61. However, Dr. Abston saw "no reason for disability" as of that date. R. at 563.

Shortly after Plaintiff left Dr. Abston's office, he received a phone call from Plaintiff's case manager regarding her disability application. R. at 561. This prompted him to research Plaintiff's medical history, at which time he discovered that Plaintiff had been lying to him about her drug use. *Id*. According to Dr. Abston, Plaintiff had been receiving multiple controlled substances from multiple physicians and multiple pharmacies both prior to and after her initial visit with him. *Id*. In light of Plaintiff's dishonesty, Dr. Abston ultimately fired Plaintiff as a patient. *Id*.

Following Dr. Abston's termination of Plaintiff, she returned to SCHC for a "follow up and medication refill" in September 2008. R.at 680-81. Dr. Volk met with Plaintiff on September 23, 2008, and noted that her chronic pain had not changed. *Id*. Dr. Volk directed Plaintiff to return on a weekly basis; however, the record indicates she did not comply with this instruction. R. at 681, 712-13.

Though Dr. Volk would not treat Plaintiff again until December 2008, he completed a Work Status Report regarding her capabilities on November 5, 2008. R. at 684. Dr. Volk assessed Plaintiff as permanently disabled and unable to participate in employment or work activities. R. at 683. On December 9, 2009, Dr. Volk prepared a Residual Functional Capacity report in which he indicated that Plaintiff's pain and other symptoms were severe enough to frequently interfere with Plaintiff's ability to perform even simple work tasks. R. at 796. He further estimated that Plaintiff would have "good days" and "bad days," and that she would miss four days of work per month. R.

at 798.

Concurrently with her medical treatment, Plaintiff also received psychiatric treatment with Deborah Deetz from October 13, 2008 through September 25, 2009. R. at 714-71. A progress note dated August 11, 2009 reports that Plaintiff had been isolating herself and losing track of time. R. at 748. Ms. Deetz directed Plaintiff to stop taking Ambien, and to make an appointment with Dr. Volk. *Id*.

On August 26, 2009, shortly after her meeting with Ms. Deetz, Plaintiff saw Dr. Volk regarding a seizure she reportedly suffered three days prior to her visit. R. at 697. Dr. Volk observed that Plaintiff had difficulty speaking and forming words, but noted that Plaintiff did not seek medical attention immediately following the event. *Id*. Dr. Volk's assessment reflects some suspicion regarding the seizure, as he indicates the seizure was "unwitnessed," that Plaintiff was out of medication, and that she may have been withdrawing from drugs. R. at 698.

## II.    Procedural History

Plaintiff initially applied for Social Security Disability Benefits on June 27, 2007. Her application was denied on October 4, 2007. R. at 81, 85. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 93. ALJ Marsha Stroup held a hearing on October 23, 2009.

In addition to Plaintiff's description of her medical condition and background (as described above), the ALJ heard testimony from vocational expert William Tucker regarding a work summary he prepared concerning the Plaintiff's abilities. R. at 75. In addition to the jobs described in the work summary, Dr. Tucker indicated, based on Plaintiff's reported limitations, that Plaintiff was qualified for and could perform work as security technician, an obstacle [sic] disc worker, and an

electronics worker.  R. at 73-79.  Upon review of the testimony and evidence, Judge Stroup issued an unfavorable decision on December 4, 2009.  R. at 39-79, 11-38.

Shortly after the decision, Plaintiff sought additional medical opinions to support her case. On January 22, 2010, she met with Dr. van de Hoven and asked him to fill out a Residual Functional Capacity Questionnaire on her behalf.  R. at 809.  Like Dr. Volk, Dr. van de Hoven concluded that Plaintiff's pain would frequently interfere with even simple tasks, and that Plaintiff was incapable of performing "low stress" jobs.  R. at 810.  He estimated that Plaintiff could sit for approximately 30 minutes before needing to stand, that she could stand for 20 minutes before needing to sit or walk around, and that her walks would need to be at least 10 minutes long.  R. at 811.  He further opined that Plaintiff should not move her head frequently, lift heavy loads, or twist, climb, bend, or squat. R. at 812.  In light of her impairments, Dr. van de Hoven believed Plaintiff would miss work approximately four days of every month.  *Id.*

Plaintiff submitted  additional evidence from Dr. Volk  to the ALJ on February 5, 2010, and asked the court to reopen the case.  R. at 7.   The ALJ reviewed the submission and ultimately rejected Plaintiff's request.  *Id.*  Plaintiff sought further review from the Appeals Council, which also declined to reopen the case.  R. at 9-10, 1-4.

On July 25, 2011, Plaintiff initiated this action pursuant to 42 U.S.C.A. § 405(g) by filing a Complaint alleging that the Commissioner of Social Security erred in denying her claim for benefits.  (Docket #1.)  On October 4, 2011, Defendant filed his answer disputing the claim that he improperly denied Plaintiff's request for benefits and asserting that the findings of fact made by the ALJ are supported by substantial evidence.  (Docket #6.)  The parties' arguments are fully briefed. (Dockets ## 11, 15, 14.)

Plaintiff argues that the ALJ made several errors of law and fact in her determination of Plaintiff's eligibility for Social Security Disability Benefits.   (Docket #11 at 6.)   Specifically, Plaintiff alleges that the ALJ did not give adequate weight to the opinions of Dr. John Volk, Dr. Raymond van de Hoven, Janis Overmyer, and Deborah Deetz. (*Id*. at 9-13.)   Additionally, Plaintiff alleges that the ALJ improperly evaluated the evidence of Plaintiff's fibromyalgia.  (*Id*. at 13-14.) Finally, Plaintiff claims that the ALJ incorrectly determined Plaintiff's Residual Functional Capacity ("RFC").  *Id*. at 14-15.

In response, Defendant argues that the aforementioned individuals' opinions were given proper weight under the relevant law, that the ALJ properly evaluated Plaintiff's fibromyalgia, and that substantial evidence in the record supports the ALJ's determination of Plaintiff's RFC.  (*See* Docket # 14.)

## LEGAL STANDARDS

### I.   General Standard of Review for Social Security Disability Appeals

The Tenth Circuit has aptly stated the standard of review as follows:

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992). Moreover, "all the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999), and he must consider all relevant medical evidence in making those findings. *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989). Therefore, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996). Although we do not reweigh the evidence or try the issues de novo, *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993), we meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

*Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

## II.    Weight Given to Physician Opinions

The weight and evaluation of opinion evidence is generally governed by 20 C.F.R. § 404.1527 (2012), which considers the source of the evidence as well as the type of relationship the source has with the claimant.  Different weight is accorded to different sources based on a number of factors, including whether the source is medical or non-medical, treating or non-treating, and examining or non-examining.  Medical opinions can only come from physicians, psychologists, and "other acceptable medical sources."  20 C. F.R. § 404.1527(a)(2).  All medical opinions must be considered in determining disability, but they are not all given the same weight.  20 C. F.R. § 404.1527(b)-(c). The amount of weight assigned to a medical opinion is determined by the following six factors: (1) whether the source has an examining relationship with the claimant; (2) whether the source has a treating relationship with the claimant; (3) the supportability of the opinion; (4) how consistent the opinion is with the overall record; (5) whether the source is a specialist; and (6) any other relevant factors.  *See* 20 C. F.R. § 404.1527(c).

## III.   Weight Given to "Other" Opinions

Only medical opinions may be used to establish that the claimant has an impairment, and 20 C.F.R. § 404.1513 enumerates which providers may offer a "medical" opinion.  Providers not included on the enumerated  list cannot provide "medical" opinion evidence.  However, non-medical providers may provide opinion evidence that helps determine the severity of an

impairment.  The list of individuals who may provide non-medical opinion evidence to help determine the severity of a claimant's disability is far more broad than the providers who may supply medical opinions.  Included in the list of sources who may provide non-medical opinion evidence for the purpose of determining impairment severity are "public and private social welfare agency personnel."  20 C.F.R. § 404.1513(f).

**IV.     Determination of Claimant's Disability**

Under the Social Security Act, a claimant's disability is determined by a five-step process. 20 C.F.R. § 404.1520.  Step one considers whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Step two evaluates the medical severity of the claimant's impairment, including whether the claimant's impairment meets the duration requirements of 20 C.F.R. § 404.1509.  20 C.F.R § 404.1520(a)(4)(ii).  Step three considers whether the medical severity of the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R § 404.1520(a)(4)(iii).  Step four compares the claimant's RFC with his or her past relevant work. 20 C.F.R § 404.1520(a)(4)(iv).   If the RFC allows the claimant to complete his/her past relevant work, then he/she is not disabled. *Id*.  The fifth and final step includes analysis of whether the RFC allows the claimant to adjust to other work.  20 C.F.R § 404.1520(a)(4)(v).

As stated above, a claimant's RFC is used at steps four and five of the sequential process to determine whether the claimant is disabled.  A claimant's RFC is determined by weighing a number of factors, as set forth in 20 C.F.R. § 404.1545.  These factors include the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" after weighing "all of the relevant medical and other evidence" in the claimant's case record.  *See id*.  If there is

10

substantial evidence in the record to support the ALJ's RFC determination, then this Court must not overturn it. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

**ANALYSIS**

As described in brief above, Plaintiff raises four primary points of contention in support of her Complaint. The Court will consider each argument in turn.

**I.     Weight Given to Physician Opinions**

A.     Dr. John Volk

Plaintiff contends that the ALJ did not give adequate weight to Dr. John Volk's medical opinions in accordance with 20 C.F.R. § 404.1527. (Docket #11 at 9.) She notes that Dr. Volk was one of her treating physicians, and argues that his medical opinions should have been given controlling weight. Alternatively, even if Dr. Volk's opinions were not entitled to controlling weight, Plaintiff avers they should have been given more weight. *Id.* at 9-10. In response, Defendant argues that there were no medical opinions from Dr. Volk in the record before the ALJ. Rather, there were only vocational opinions from Dr. Volk, which is a determination reserved for the ALJ. Significantly, in her decision, the ALJ specifically referenced Dr. Volk's opinion evidence, noting that "Dr. Volk's opinion on this issue is not supported by the medical record as a whole." R. at 30.

As discussed above, opinion evidence is weighed based on a number of factors, including whether the provider may give a medical opinion for the purposes of disability determination. Because Dr. Volk is a physician, he is qualified to offer medical opinions. However, the weight of medical opinions varies depending on the type of relationship the physician has with the claimant. In this case, the record indicates that Dr. Volk treated the Plaintiff on numerous occasions from

11

approximately August 2008 until the date of the ALJ's decision on December 4, 2009.  Accordingly, Dr. Volk is considered a treating physician.  If Dr. Volk's medical opinions were consistent with the overall medical record, they would also be entitled to controlling weight.

This Court has reviewed the record and found that the documents in evidence from Dr. Volk only offer opinions about whether the Plaintiff is disabled.  This, however, is a determination reserved for the ALJ.  Accordingly, the ALJ properly refused to weigh these opinions in her analysis.  *See* 20 C.F.R. § 404.1527(d)(3); *see also Cowan v. Astrue*, 552 F.3d 1182, 1189 (finding that a doctor's opinion regarding a claimant's ability to work was "not a true medical opinion" entitled to weight because it did not contain the physician's judgment regarding the nature and severity of the claimant's physical limitations).

After the ALJ issued her decision on December 4, 2009, the Plaintiff submitted additional documents from Dr. Volk.  First, Plaintiff's counsel wrote a letter to the ALJ, dated February 2, 2010, requesting that she reconsider her decision in light of new evidence from Dr. Volk.  In particular, Plaintiff urged the ALJ to consider a letter from Dr. Volk dated December 23, 2009, stating that the Plaintiff no longer exhibited drug-seeking behavior and was on a stable medication regime.  Dr. Volk also completed a Fibromyalgia Residual Functional Capacity Questionnaire ("Fibro Questionnaire").  The ALJ responded on February 17, 2010, declining to reopen the case after reviewing Dr. Volk's letter and the Fibro Questionnaire.

This new evidence from Dr. Volk does constitute medical opinion evidence, but it is inconsistent with other medical evidence in the record.  On the whole, there is substantial evidence in the record to support the weight given to Dr. Volk's opinion, thus, the Court finds the ALJ did not error in assigning minimal weight to this evidence.

B.   Dr. Raymond van de Hoven

Plaintiff argues that Dr. Raymond van de Hoven's opinion and the Fibro Questionnaire should be given "[g]reat weight," and therefore the ALJ erred in failing to do so. *See* (Docket #11 at 11.)  The Defendant responds that the Appeals Council properly reviewed Dr. van de Hoven's opinion evidence and ruled that it was not substantial enough to reverse the ALJ's unfavorable decision.  (Docket #14 at 24.)

Notably, Dr. van de Hoven examined the Plaintiff on January 22, 2010, after the ALJ reached her decision.  As previously discussed, a physician who has examined the claimant is entitled to give a medical opinion, and that opinion will be weighed pursuant to 20 C.F.R. § 404.1527.  In this case, it is true that Dr. van de Hoven examined the claimant on one occasion, and as a physician, his medical opinions must be considered.  The Appeals Council considered the medical opinions of Dr. van de Hoven and found that the evidence did not support a reversal of the ALJ's decision.  R. at 1-2.  The Court's review of the record is consistent  with this determination, and thus, the Court finds no error regarding the Appeals Council's consideration of Dr. van de Hoven's Fibro Questionnaire.

## II.   Weight Given to "Other" Opinions

Plaintiff alleges that the ALJ committed reversible error by giving "no weight" to her social worker's and nurse practitioner's opinions.  In her decision, the ALJ acknowledged the opinions of several non-medical sources, including Ms. Deetz and Ms. Overmyer, but noted that the sources were not qualified to offer medical opinions.  R. at 30. Although these providers may offer opinions regarding the severity of the impairment, this Court is unaware of any precedent within the Tenth

Circuit that requires an ALJ to assign particular weight to an "other source" opinion.[3]  As long as the written decision reflects the ALJ's consideration of the testimony, the ALJ need not make specific written findings regarding the credibility of the sources.  *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006).

Upon review of the decision,  the Court is satisfied with the ALJ's consideration of evidence from Ms. Deetz and Ms. Overmyer, and her determination that neither provider was qualified to offer a medical opinion.  In light of this determination, the ALJ was within her discretion in deciding the amount of weight, if any, to give to these non-medical opinions.  Therefore, this Court finds the ALJ made no error in discounting these opinions.

III.    **Analysis of Plaintiff's Fibromyalgia**

Plaintiff claims that the ALJ inadequately considered the evidence in the record regarding the Plaintiff's alleged fibromyalgia.

Drs. Volk and van de Hoven both submitted Fibro Questionnaires after the ALJ's decision, which supported a finding that Plaintiff has severe fibromyalgia.  Conversely, Dr. Abston, one of Plaintiff's treating physicians, questioned whether Plaintiff's pain was attributable to fibromyalgia.  R. at 560-61.  In considering the variant opinions, the Court remembers that "'[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and that "[it] may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have

_____

[3]The Court is aware of two unpublished cases within the Ninth Circuit that have found error when the ALJ gave "no weight" to an "other source" opinion. *See Jager v. Barnhart*, 192 F. App'x 589, 591 (9th Cir. 2006); *Norris v. Astrue*, No. C10-1855-MJP-BAT, 2011 WL 3924807, at *6 (W.D. Wash. Aug. 5, 2011).  In the interest of judicial caution this Court will not apply the reasoning in these cases until the Tenth Circuit has done so.

made a different choice had the matter been before it de novo.'" *Lax v. Astrue*, 489 F.3d 1080, 1084

(10th Cir. 2007) (quoting *Zolitanski v. Federal Aviation Administration*, 372 F.3d 1195, 1200 (10th

Cir. 2004)).

Though the Court recognizes that reasonable minds could draw different conclusions about

whether Plaintiff has fibromyalgia and how severe it may be, there is substantial evidence in the

record to support the ALJ's determinations.  Accordingly, this Court finds no error in the ALJ's

assessment of the presence and severity of the Plaintiff's fibromyalgia.

**IV.**    **Determination of Plaintiff's Residual Functional Capacity**

As with other findings made by the ALJ, this Court cannot overturn the determination of

a claimant's RFC if there is substantial evidence in the record to support it.  Here, the ALJ found

that the Plaintiff:

> has a residual functional capacity to perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a), limited to work at the unskilled vocational preparation level,
> with no climbing or balancing; and occasional bending, stooping, kneeling, crouching or
> crawling; and frequent handling, fingering or reaching.  Further she is limited to jobs
> which do not require prolonged exposure to extreme temperatures, particularly cold; and
> should engage in activity which does not require interaction with the general public.

R. at 19.

> Sedentary work is defined as follows:
>
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
> or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is
> defined as one which involves sitting, a certain amount of walking and standing is often
> necessary in carrying out job duties. Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The ALJ had access to the Plaintiff's medical records from approximately August 2003

to December 2009, and the Appeals Council received additional evidence presented by the

Plaintiff after the ALJ reached her decision.  Plaintiff's medical record is filled with numerous providers diagnosing and treating various ailments.  The Plaintiff appears to have inconsistently followed treatment protocols and often abused narcotic prescriptions.  The ALJ painstakingly outlined the Plaintiff's medical history in her written decision.  Additionally, the ALJ specifically stated that she took the entirety of Plaintiff's medical record into account in determining Plaintiff's RFC.  R. at 19.

The general practice in the Tenth Circuit "is to take a lower tribunal at its word when it declares that it has considered a matter."  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).  In accordance with this principle, the Court is satisfied that the ALJ considered the evidence in the record. The Court determines, based on its own review, that there is substantial evidence to support the Plaintiff's RFC.  Therefore, the Court finds no error on this point.

## **CONCLUSION**

Upon review of the entire record and in consideration of the findings of the ALJ, the Court does not find reversible errors of law or fact.  Accordingly, for the reasons stated herein, the Court respectfully RECOMMENDS that the District Court AFFIRM the Commissioner of Social Security's decision that the Plaintiff is not disabled.

Respectfully submitted at Denver, Colorado, this 7th day of September, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge