IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-01933-RBJ-MEH

LISA PATEL,

    Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

    This is an appeal from the Commission's denial of plaintiff Lisa Patel's application for Social Security Disability benefits. After receiving full briefing by the parties, the Court referred the case to United States Magistrate Judge Michael E. Hegarty. On September 7, 2012 Judge Hegarty issued a 16-page decision [docket #19] in which he recommended that the Court affirm the Commissioner's determination that Ms. Patel is not disabled within the meaning of the Social Security disability laws and, therefore, that she is not entitled to disability benefits. Ms. Patel filed a timely objection to the recommendation [#20], and the Commissioner filed a response.

**Standard of Review**

    The Court must determine de novo the part of the magistrate judge's recommendation to which plaintiff objected. Fed. R. Civ. P. 72(b)(3). Plaintiff has objected to the recommendation in its entirely, and accordingly, I have conducted a de novo review. In addition to the parties' briefs and Judge Hegarty's recommendation, I have reviewed the transcript of the hearing before the ALJ (R. 39-79); the ALJ's written decision (R. 11-38); the Notice of Appeals Council's

Action (R. 1-4); and pertinent portions of the very extensive medical records that are found at R. 350-833.

**Conclusions**

Ms. Patel argues that the Administrative Law Judge ("ALJ") (1) did not properly assess and weigh the opinions of John Volk, M.D.; (2) did not properly evaluate the opinions of Janis Overmyer, a social worker, and Deborah Deetz, a mental health nurse practitioner; and (3) did not properly evaluate the opinions of Raymond van de (sic) Hoven; and (4) did not discuss Ms. Patel's testimony and other evidence concerning the restrictions caused by her fibromyalgia.

<u>Dr. Volk.</u>

By way of background, Ms. Patel claims a date of onset of disability of June 26, 2007 when she resigned her employment with a public defender's office in Florida. She was treating primarily with Jose Marquina, M.D. and Mathew Black, M.D. in Florida during the period August 2003, when the medical records in the record begin, until early 2008, when she moved to Colorado, although she also saw several other providers during that period. A common theme that emerges from the Florida records is a concern that she was abusing narcotic medications, and that at least some of the illnesses of which she complained might have been drug-induced or caused by drug-withdrawal.

Ms. Patel first saw Dr. Volk in the spring of 2008. Ms. Patel initially left Dr. Volk after he refused to fill a prescription. She treated with Dr. Abston, a pain physician, between May and August 2008. Dr. Abston, like doctors before and after him, was concerned about her drug use. He determined that her claimed level of pain was inconsistent with his observations and testing that was done, and he declined to sign a disability forms that were requested by Ms. Patel and a nurse case manager for Weld County. R.560. Dr. Abston "fired" Ms. Patel as a patient after

2

researching her drug history and concluding that she had been dishonest with him about her drug use, and concealing that she was receiving multiple controlled substances from multiple physicians. R. 559-561.

That is when she returned to Dr. Volk. The ALJ discusses Dr. Volk's treatment of Ms. Patel at some length. R.25, 30. It is evident that Dr. Volk too was concerned about Ms. Patel's drug abuse. Ultimately, Dr. Volk filled out a work status report for Weld County, apparently the same or similar form that Dr. Abston declined to complete. He did not answer all of the questions, but he did express the opinion that Ms. Patel was permanently unable to work because of chronic pain. R. 683. The ALJ noted this opinion. However, she found that "Dr. Volk's opinion on this issue is not supported by the medical record as a whole." R.30. She added that a disability determination is made by the agency, and that Dr. Volk's opinion in that regard was not binding on the ALJ. *Id.*

Treating physicians' opinions are generally entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ must determine whether a physician's opinion is well supported by medically-acceptable clinical and laboratory diagnostic techniques and whether it is consistent with other evidence in the record. If these two criteria are met, then the physician's opinion is entitled to controlling weight. *Id.* It was clear to the ALJ, and is clear to me, that Dr. Volk's opinion was not consistent with other evidence in the record. The ALJ noted several physician opinions to the effect that her illnesses were not as disabling as Ms. Patel and apparently Dr. Volk claimed; and that she did not follow recommendations that could address her illnesses (Abston, Sporn, Novak, Martin, Walker, Kemme).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighted

using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Goatcher v. U.S. Department of Health and Human Serv's,* 52 F.3d 288, 290 (10th Cir. 1995). (quoting *Watkins*, 350 F.3d at 1300). Ms. Patel complains that the ALJ did not consider all these factors. In *Marshall v. Astrue* the Tenth Circuit examined a similar issue when an ALJ determined that a treating physician's report was inconsistent with the entire medical record but did not go through a factor by factor analysis in determining that it should be accorded no weight. 315 Fed. App'x 757 (10th Cir. 2009). Instead, the ALJ in *Marshall* focused only on the consistency between the treating physician's opinion and the entire medical record. *Id.* The court determined that "[a]lthough the ALJ's discussion could and should have been more thorough, we conclude that he stated adequate reasons for rejecting [the treating physician's] opinion." *Id.* at 761.

Here, I find that the ALJ's review of the medical records was remarkably thorough, and that while she did not go through the six factors one by one, in substance she considered all of them. I agree with the magistrate judge that the ALJ gave minimal weight to the medical and disability opinions of Dr. Volk.

<u>Overmyer and Deetz</u>

Ms. Overmyer is a licensed clinical social worker and Ms. Deetz is a certified nurse practitioner. They are on the staff of North Range Behavioral Health. The ALJ did indicate that she considered the records in which Ms. Overmyer's and Ms. Deetz' involvement was documented. R. 27, 30-31. My review of those records, generally found at R. 714-71, indicates that these individuals generally relied on Ms. Patel's subjective statements. The ALJ found, and Ms. Patel does not dispute, that they provided "virtually all of the opinions" as to Ms. Patel's mental health impairments. R. 30.

In any event, the ALJ indicates that she gave those opinions no weight. First, she noted that social workers and nurse practitioners are not "acceptable medical sources." R. 30. That is correct under Social Security rules and regulations. *See* 20 C.F.R. 404.1513(f); SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006);. The magistrate judge noted that he was aware of no authority requiring that an ALJ give particular weight to opinions of social workers or nurses.

In her objection, Ms. Patel's counsel states, "according to SSR 06-03p, the ALJ must consider the same factors when weighing opinions from non-acceptable medical sources as when weighing opinions from acceptable medical sources." Objection [#20] at 6. I did not find support for that statement in my review of SSR 06-03P. The rule does state, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. It also states that "[t]he evaluation of an opinion from a medical sources who is not an 'acceptable medical source' depends on the particular facts in each case." *Id.* at *5. The ALJ found that nurse practitioner Deetz' "conclusions that the claimant suffers from marked limitation in activities of daily living, social function and ability to maintain concentration, persistence and pace [found at R. 762] are not supported by the weight of medical evidence." R. 30-31. There is substantial support for this finding in the record.

Overall, I find that the ALJ was aware of and consider the opinions of Ms. Overmyer and Ms. Deetz, and that her decision in this instance to give them no weight was not error.

<u>Dr. van den Hoven</u>

On January 22, 2010, seven weeks after the ALJ's adverse determination, Ms. Patel was seen by Raymond P. van den Hoven, M.D. for "electrodiagnostic testing of the left lower

5

extremity." This was based on Ms. Patel's report that her left leg was "floppy." R. 806. On physical examination Dr. van den Hoven found that her gait pattern was unremarkable, and that she moved without much discomfort, but that she reported tenderness on palpation that raised "the possibility of not only fibromyalgia but also perhaps some vitamin deficiency." R. 807. His impression was:

1. No acute or chronic lumber radiculopathy L3 through S2 myotomes or lumber plexopathy left lower extremity.

2. No tarsal tunnel syndrome or peroneal neuropathy left lower extremity.

3. No carpal tunnel syndrome on screening exam left upper extremity.

4. No peripheral neuropathy noted.

5. I do not find any peripheral nerve explanation for her complaints of the left leg "dragging." I suspect this is due more to a central phenomena given her history of a "stroke" in the right hemisphere although she was only hospitalized for one night and I do not have any medical records to confirm her history. She also has a left sided mild disc herniation at C5-6 but there is no significant cord compression or myelopathy seen. The left leg condition, therefore, would not be altered by addressing the lumbar spine.

   This patient does have a variety of other medical diagnoses as indicated early. I do believe there is fibromyalgia, however she has widespread tenderness that is also noted over bony structures and therefore I would recommend vitamin D level determination and if below 30 add vitamin D supplementation between 1 and 2000 units per day.

   She requested a residual functional capacity questionnaire for fibromyalgia to be completed.

R. 808.

Dr. van den Hoven did complete the fibromyalgia questionnaire, which is a Social Security form. R. 809-13. He estimated that, based upon Ms. Patel's impairments, she could walk two blocks without rest or severe pain; sit without getting up for 30 minutes; stand without sitting down or walking around for 20 minutes; and sit for about four hours and stand for about two hours in an eight-hour working day, but should walk around for 10 minutes every 30

6

minutes. He checked "yes" that she needed a job that permits shifting positions and that she will sometimes be required to take unscheduled breaks, but "no" regarding the need for a can or other assistive device or for elevation legs while sitting. She can lift less than 10 pounds occasionally, 10 pounds rarely, and 20 pounds never. She can twist, stoop (bend), crouch, and climb stairs rarely, and climb ladders never. She can turn her head right and left, look up and hold her head in a static position rarely, but never look down. She has no significant limitations with reaching, handling or fingering. He indicated that she would likely be absent from work about four days each month. R. 811-12.

Plaintiff's counsel submitted this information to the Appeals Council. The Appeals Council's notice of denial of Ms. Patel's appeal, dated May 24, 2011, notes that "we considered the contentions raised in your representative's brief and the additional evidence listed on the enclosed Order of Appeals Council," but "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision." R. 1-2, 4.

Ms. Patel cites SSR 96-8p for the proposition that an ALJ must explain why an opinion that is significantly probative is not adopted, and she then complains that "[n]either the Appeals Council nor Judge Hegarty explains why his opinions were not adopted as required by SSR 96-8p." Objection [#20] at 7-8.

The ALJ did not have the van den Hoven information when her decision was made. There is no indication in the file that Ms. Patel submitted it to her with a request to reopen her decision. Plaintiff cites no authority that the Appeals Council is required to explain why it found that the information did not provide a basis for changing the ALJ's decision. The magistrate judge stated, "[t]he Court's review of the record is consistent with this determination." Recommendation [#19] at 13. I agree. Ms. Patel saw Dr. van den Hoven one time. His opinions

were based almost entirely on Ms. Patel's subjective history and her complaints of tenderness on palpation, including her statement about a history of stroke. The ALJ noted that Ms. Patel had reported a history of a stroke in 2004 to several providers, but that there was no medical evidence of that. This was one of several bases for the ALJ's finding that Ms. Patel lacked credibility. R. 21.

### Fibromyalgia

Plaintiff argues that her fibromyalgia and pain were not properly evaluated in the determination of her RFC. The ALJ found, by "affording the client the benefit of the doubt as much as possible," that Ms. Patel had four "severe impairments," including degenerative disc disease, fibromyalgia, anemia and depression. R. 16. She stated that she would "afford the claimant with a finding that these complaints result in some reduction in exertional function." *Id.* However, she found "no basis for additional limitations apart from those reflected in the claimant's residual functional capacity described below." R. 17.

Frankly, the ALJ's residual functional capacity determination credited Ms. Patel with a higher degree of limitation than might have been apparent from the medical records. She found that Ms. Patel has the residual functional capacity to perform sedentary work at the unskilled vocational preparation level, with no climbing or balancing; occasional bending, stooping, kneeling, crouching or crawling; frequent handling, fingering or reaching; that she is limited to jobs that do not require prolonged exposure to extreme temperatures, particularly cold; and that she should engage in activity that does not require interaction with the general public. R. 19.

Just as was indicated in Dr. van den Hoven's report (which, again, the ALJ did not have), the fibromyalgia diagnosis and the complaints of pain generally were based on Ms. Patel's statements, i.e., subjective, not objective, evidence. The ALJ noted that fibromyalgia "has not

8

been verified by a well-documented examination showing, as defined by the American College of Rheumatology, widespread pain in all four quadrants of the body for a minimum duration of three months with at least 11 of the 18 specified tender points occurring about the neck and shoulders, chest, hip, knee, and elbow regions." R. 17. The ALJ notes and comments on the evaluations of Dr. Kalman and Dr. Hussey, essentially indicating again that their findings were based on subjective evidence. R. 29.

Significantly, however, the ALJ simply did not find Ms. Patel's reports concerning the limitations caused by Ms. Patel's fibromyalgia and pain to be credible. Her credibility determinations were linked to substantial evidence in the record. *See* R. 21 (Ms. Patel's claims regarding impairment resulting from a stroke were not supported by any medical evidence); 24 (Dr. Abston found that Ms. Patel's stated level of pain was inconsistent with his observations of her); 24-25 (Dr. Abston noted that her pain was "conveniently pain of fibromyalgia and I can do no tests to objectively assess [it] .. her stated level of pain is way out of proportion to her MRI's'); 25 (Dr. Abston fired her as a patient due to her dishonesty); 25 (Ms. Patel's testimony at the ALJ hearing lacked credibility based on the medical records); 28 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment and the weight of medical evidence.").

This Court generally defers to the credibility determinations of the ALJ. Such deference is particularly compelling here in light of the substantial evidence of a history of drug abuse and

apparent efforts to manipulate the system to obtain prescriptions. In sum, the Court finds no error. The ALJ's findings were supported by substantial evidence.

### The Magistrate Judge's Recommendation

Finally, I note that in addition to my own review of the record, I have carefully read and considered the recommendation of Magistrate Judge Hegarty {#19}. I find that it was a thorough and thoughtful discussion of the factual and legal issues, including the issues concerning Dr. Volk, *id.* at 11-12; opinions from others than acceptable medical sources, *id.* at 9-10, 13-14; Dr. van den Hoven, *id.* at 13; and fibromyalgia and the RFC determination, *id.* at 14-16.

**Order**

For the foregoing reasons, the Court accepts and adopts the recommendation of the magistrate judge [#19]. The Commissioner's decision that Ms. Patel is not disabled and entitled to benefits is affirmed.

DATED this 2nd day of January, 2013.

BY THE COURT:

*/s/ Brooke Jackson*

_____
R. Brooke Jackson
United States District Judge